BURNHAM, *Appellant*, v. ROSENBERGER.

Division One, June 6, 1892.

**Partition:** SETTLEMENT. In partition plaintiff claimed an undivided three-fourths interest in nineteen lots, the title to which was in defendant. Subsequently the defendant conveyed to plaintiff eleven of the lots with the understanding that it was in full settlement, whereupon plaintiff dismissed his suit. *Held*, that it was inferable, that the conveyance was understood by both parties to be a final settlement and partition.

*Appeal from Jackson Circuit Court.*—HON. R. H. FIELD, Judge.

AFFIRMED.

*Hayward & Griffin* for appellant.

The parol conveyance by which defendant claims that plaintiff conveyed to him an undivided one-fourth of the property in question was not established by the evidence, and, if established, has no validity in law. (1) The proof of such conveyance is not of that cogent character which a court of equity requires and demands. *Veth v. Gierth,* 92 Mo. 97; *Strange v. Crawley,* 91 Mo. 287; *Lapham v. Dreisvogt,* 36 Mo. App. 275; *Railroad v. McCarty,* 97 Mo. 214; *Brownlee v. Fenwick,* 103 Mo. 420. (2) The conveyance could not be made by parol, and is invalid as contravening the provisions of the statute of frauds. 1 Story on Equity Jurisprudence [12 Ed.] sec. 764; *Brownlee v. Fenwick,* 103 Mo. 420; *Sitton v. Shipp,* 65 Mo. 297; *Lydick v. Holland,* 83 Mo. 703; *Stoddard v. Hart,* 23 N. Y. 556; *Peacock v. Nelson,* 50 Mo. 256; *Baier v. Berberich,* 6 Mo. App. 537; *Shaw v. Shaw,* 86 Mo. 594;

*Harrow v. Johnson*, 3 Metc. (Ky.) 578; *Donaldson v. Newman*, 9 Mo. App. 235; *Allen v. Richards*, 83 Mo. 55; *Springer v. Kleinsorge*, 83 Mo. 152. (3) There was no consideration for the parol conveyance set up. 1 Story on Equity Jurisprudence [13 Ed.] sec. 246. (4) Even conceding all that defendant asserts, there is no equity in his claim.

*Theo. Hawley* for respondent.

(1) The agreement whereby defendant was to have a half interest in the property in controversy related solely to the consideration paid therefor, and was not within the statute of frauds, and was supported by an adequate consideration. *Black v. Elliott*, 1 Mo. 275; *Halsa v. Halsa*, 8 Mo. 303; *Hudson v. Busby*, 48 Mo. 35; *Marks v. Bank*, 8 Mo. 316; *Blake v. Blake*, 7 Iowa, 76; *Micheal v. Foil*, 6 S. E. Rep. (N. C.) 264; Freeman on Cotenancy [Ed. 1874] secs. 151–165. (2) The negotiations leading up to the execution by defendant of his deed to plaintiff for the eleven lots, its acceptance by plaintiff, and his acts and conduct, work in equity a complete estoppel upon him in the present action. 2 Pomeroy on Equity, sec. 801, *et seq.; Bank v. Morgan*, 117 U. S. 112; *Sissons v. Rice*, 30 N. W. Rep. (Iowa) 735; *Nichols, Shepherd & Co. v. Shaffer*, 30 N. W. Rep. (Iowa) 383; *Dezell v. Odell*, 3 Hill (N. Y.) 215; *Guffey v. O'Reilley*, 88 Mo. 418; *Buner, Adm'r, v. Beck, Ex'r*, 46 Mo. 327; *Fort v. Allen*, 17 S. E. Rep. (N. C.) 685; *Norton v. Higbee*, 38 Mo. App. 467.

BLACK, J.—The plaintiff, George T. Burnham, brought this suit in equity against the defendant Rosenberger to charge the latter as holding the undivided three-fourths of certain lots in trust for plaintiff.

The cause was heard by a referee, who reported in favor of the plaintiff. Exceptions of defendant filed to the report were sustained, and the cause was then submitted to the court, and the court found for the defendant and dismissed the bill. The case, therefore, stands now on the evidence reported by the referee and the finding of the court; so that the referee's findings are out of the case.

The substantial averments of the petition are that defendant held the title to nineteen lots in Otis Place, Kansas City; that the plaintiff owned the undivided three-fourths of these lots, and the defendant Rosenberger owned the one-fourth only, though he held the entire legal title; that defendant conveyed to the plaintiff eleven of the lots on the sixth of October, 1888, subject to incumbrances thereon; that defendant sold five of the lots, not conveyed to plaintiff.

The answer sets up, among other things, that there was a full settlement and partition between the parties, and that pursuant thereto the defendant executed the deed of the sixth of October, 1888, conveying the eleven lots to the plaintiff.

The evidence discloses the following facts: The plaintiff and the defendant owned four lots in what is called Goodrich's addition to Kansas City, the plaintiff having an undivided three-fourths interest and the defendant Rosenberger a one-fourth interest. There was an incumbrance of some $22,000 on these lots for the purchase price. The holder of the incumbrance had advertised the property for sale, and the plaintiff was wholly unable to take care of his share of that debt, while the defendant was able to pay his portion. To assist the plaintiff, as is evident from all the evidence, the plaintiff and defendant traded these lots for nineteen lots in Otis Place, the lots now in question. To accomplish this trade it was necessary to reduce the

debt on the four Goodrich addition lots to $15,000.
To that end and for that purpose the defendant bor-
rowed $6,000 by giving his own note, secured by a deed
of trust on some of the nineteen lots. These trans-
actions were perfected in July, 1888. The facts thus
far stated show that plaintiff became the equitable
owner of three-fourths of the nineteen lots, and the
defendant the owner of the other fourth, subject to
incumbrances thereon. This brings us to the evidence
concerning the settlement and partition set out in the
answer.

The proof shows quite clearly that the $6,000 was
borrowed on Rosenberger's own personal responsi-
bility, and that he was put to much trouble in getting
the money. He also labored under the belief that they
were trading good property for that of uncertain value.
He testified that in view of these facts he contended
that he should have the one-half of the nineteen lots.
He says he had a conversation with the plaintiff after the
deeds consummating the trade and loan had been made,
and before they were recorded, in which he told Burn-
ham that he wanted it then settled in the presence of
witnesses that he was to have half the lots, and that
Burnham said, "It is all right," or words to that effect.
Two of the persons interested in the trade and loan
gave evidence to the same effect. Plaintiff admits that
Rosenberger then said something about the interest he
claimed, but he says he did not agree that Rosenberger
should have the one-half. He called two or three
other persons who were present, who say they heard no
such a conversation as that related by Rosenberger and
two of his witnesses.

Subsequently and prior to September, 1888, the
plaintiff and defendant authorized Mr. Ham and Mr.
Davidson to divide the lots, and they made a division
of them, but it seems the defendant refused to abide

their work. Thereupon the plaintiff brought a suit for partition. The defendant answered by admitting that plaintiff owned the one-half, but denied that he had any greater interest.

Pending that suit, a Mr. Griever made a proposition to defendant that they settle the matter, which defendant accepted. Thereupon Griever, for the plaintiff, drew one lot, and defendant drew one, and so on, until defendant got eight, thus giving plaintiff eleven and defendant eight lots. We infer from the evidence that plaintiff got more than half in number on account of incumbrances on them, but it is not so in terms stated in the evidence. Pursuant to this division defendant executed the deed of the sixth of October, 1888, and the plaintiff, at the same time, dismissed his pending suit.

Plaintiff insists that this deed was not executed in full settlement of their affairs, while defendant says the agreement between him and Griever was that the deed should settle all disputes, and that he made it on no other condition. Griever says plaintiff did not know that he was trying to settle the dispute, and he so told defendant when they divided the lots, but he says the division "was made in full partition." He says after the division had been made, he told plaintiff that he could get a deed for eleven lots, if he, plaintiff, would dismiss the suit. The conversation, he says, "amounted simply to this, that if he would dismiss that suit I would give him a deed to eleven lots. I was not acting for Burnham." Burnham then prepared a deed, and gave it to Griever to be executed by defendant, which was done, and the deed delivered to plaintiff, and the suit dismissed by him.

The circumstance upon which the plaintiff places most reliance is the fact that he had a three-fourths interest in the Goodrich addition lots, and, hence, his

interest in the nineteen lots for which he and plaintiff traded, · should be the same. This circumstance is entitled to due consideration, but it drops into the background when we see that these people were trading in their own debts quite as much as in real estate. Unusual things are not surprises in such transactions. Plaintiff was about to lose his interest in the Goodrich addition lots, and we think the weight of the evidence is to the effect that the defendant declined to make the trade and incur a personal liability for the $6,000 until plaintiff agreed to give him one-half of the nineteen lots. Besides this the proof is clear that defendant executed the deed on the sixth of October, 1888, with the understanding on his part that it was a full settlement of the pending dispute. Griever's evidence is to the effect that plaintiff did not so understand that transaction. How, or at whose instance, Griever happened to make this settlement with defendant is left wholly unexplained—a mystery. According to his evidence he gave defendant to understand that the deed constituted a full settlement, but that he simply ·told plaintiff the suit was to be dismissed. This double dealing must bear its natural fruit, and that is, to cast a doubt over ·some of his statements. After he made the settlement he reported to plaintiff that he could get eleven lots, and plaintiff prepared a deed and accepted it when executed by defendant, and then dismissed the pending suit. These transactions carry with them the natural inference that the parties had settled the pending controversy. We agree with the trial court in the finding that the conveyance of the eleven lots to plaintiff was, and was understood by both parties, to be a full settlement and partition. With this conclusion as to the facts there is no question of law in the case. The judgment is affirmed. All concur.